**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **SAMANTHA MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **4:20-cv-00859** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMAND** |
| **CONVERGENT OUTSOURCING, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COMES the Plaintiff, SAMANTHA MILLER, by and through her attorneys, SMITHMARCO, P.C., and for her complaint against the Defendant, CONVERGENT OUTSOURCING, INC., Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II. JURISDICTION & VENUE

2.      Jurisdiction arises under the Fair Credit Reporting Act 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4.      SAMANTHA MILLER, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Independence, County of Jackson, State of Missouri.

5.      At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

Case 4:20-cv-00859-SRB   Document 1   Filed 10/25/20   Page 1 of 9

6.     CONVERGENT OUTSOURCING, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debts from consumers within the State of Missouri.  Defendant's principal place of business is located in the State of Washington, and Defendant is incorporated in the State of Missouri.

7.     Defendant has operated its business under former names including, "ER Solutions, Inc.," and, "Convergent Outsourcing Solutions, Inc."

8.     At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

## IV.    ALLEGATIONS

9.     As alleged in this pleading, "credit reports" are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

10.    Plaintiff is unaware of any account with Defendant.

11.    On June 23, 2018, Plaintiff filed a Chapter 7 bankruptcy petition (hereinafter, the "Bankruptcy Petition") in the United States Bankruptcy Court for the Western District of Missouri (hereinafter, the "Bankruptcy Court"), commencing bankruptcy case number 18-41704-can7.

12.    At the time Plaintiff filed her Bankruptcy Petition, she was unaware of any debt allegedly owed to Defendant.

13.    Because she was not aware of any debt and/or delinquent account with Defendant, Plaintiff did not include Defendant in her Bankruptcy Petition.

14.    To the best of Plaintiff's knowledge, at the time Plaintiff filed her bankruptcy petition, she owed no debt to Defendant.

15.    To the best of Plaintiff's knowledge, at the time Plaintiff filed her bankruptcy petition, she had no account(s) with Defendant.

16.     On or about October 9, 2018, the Bankruptcy Court entered an order discharging Plaintiff's debts, thereby extinguishing her liability for all unsecured debts incurred prior to June 23, 2018, including any debt allegedly owed to Defendant, if any.

17.     When the Bankruptcy Court entered the Discharge Order, any debtor-creditor relationship allegedly existing between Plaintiff and Defendant regarding a debt ended.

18.     Moreover, at the time of Plaintiff's discharge, there were no assets in the bankruptcy estate from which to make any distribution to Plaintiff's potential creditors.

19.     Given that Plaintiff's bankruptcy discharge resulted in a *Report of No Distribution* (i.e., Plaintiff had no assets in her estate to distribute to any creditors), any unsecured debts that were incurred prior to the filing of Plaintiff's bankruptcy petition are considered discharged, irrespective of whether the debt was specifically listed in Plaintiff's schedule of creditors, filed as part of her Bankruptcy Petition.

20.     Any alleged debt(s) or account(s) that Plaintiff had with Defendant, or that had been assigned to Defendant, and that had been incurred prior to the date Plaintiff filed her Bankruptcy Petition, were effectively discharged as of the date of the Discharge Order.

21.     Defendant was aware that any debt incurred by Plaintiff prior to June 23, 2018, which was assigned to Defendant for collection, was discharged in bankruptcy.

22.     To the best of Plaintiff's knowledge, at no time since October 9, 2018 has Plaintiff owed any debt to Defendant.

23.     To the best of Plaintiff's knowledge, at no time since October 9, 2018 has Plaintiff opened any accounts with Defendant.

24.     At no time since October 9, 2018 has Plaintiff had any personal business relationship with Defendant.

25.     Given the facts delineated above, at no time since October 9, 2018 has Defendant had any information in its possession to suggest that Plaintiff owed a debt to Defendant.

26.     Given the facts delineated above, at no time since October 9, 2018 has Defendant had any information in its possession to suggest that Plaintiff was responsible to pay a debt to Defendant.

27.     Experian Information Solutions, Inc., (hereinafter, "Experian") is a consumer reporting agency as that term is defined by 15 U.S.C. § 1681a(f).  Experian is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

28.     Consumer reports contain personal, private, and highly confidential information, including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided, (iv) social security number, (v) date of birth, (vi) current telephone number, (vii) previous known telephone number(s), (viii) current employer; (ix) former employer(s); (x) public records, (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

29.     Given the overwhelming scope of the information available when one procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, *inter alia*, limit the furnishing of consumer reports to statutorily enumerated purposes only.  See *TRW Inc., v. Andrews*, 534 U.S. 19, 23 (2001).

30.     The statute was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." *Syed v. M-I, LLC et al.,* 846 F.3d 1034, 1037 (9th Cir. 2017) (citing the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also,  United States v. Bormes*, 568 U.S. 6, 7 (2012) (The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); *Cole v. U.S. Capital*, 389 F.3d 719, 723 (7th Cir. 2004) ("In [§1681] Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies.").

31.     When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

32.     Tasked with protecting a consumer's privacy, the FCRA governs **who** can access consumer report information from credit reporting agencies and **for what purpose**. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

33.     Defendant is a subscriber and user of consumer reports issued by Experian.

34.     Defendant also furnishes data to Experian about its experiences with its customers and potential customers.

35.     Defendant is a "furnisher" of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agency about its transactions and/or other experiences with consumers.

36.     Defendant has a symbiotic relationship with Experian such that it furnishes information to Experian regarding its transactions and/or other experiences with consumers while also purchasing from Experian information about its customers and other consumers.

37.     On or about September 17, 2019, despite being cognizant of the facts as delineated above, Defendant procured from Experian a copy of Plaintiff's consumer report at which time, Defendant made a general or specific certification to Experian that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purpose enumerated by the FCRA.

38.     The certification made by Defendant to Experian was false.

39.     Despite certifying to Experian that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had no such permissible purpose.

40.     At no time on or prior to September 17, 2019 did Plaintiff consent to Defendant obtaining her consumer report.

41.     On or about September 17, 2019, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report.

42.     On or about September 17, 2019, at the time Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to Defendant.

43.     On or about September 17, 2019, at the time Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's Confidential Information.

44.     On or about September 17, 2019, at the time Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Plaintiff's Confidential Information.

45.     On or about September 17, 2019, at the time Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Defendant obtained information relative to Plaintiff's credit history and credit worthiness.

46.     Plaintiff has a right to have her Confidential Information kept private.

47.     No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides her consent for the release of the information or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

48.     Defendant procured from Experian Plaintiff's consumer report without her knowledge or consent.

49.     Defendant procured from Experian Plaintiff's consumer report without a permissible purpose.

50.     By its actions, when Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Defendant invaded Plaintiff's privacy.

51.     By its actions, when Defendant impermissibly procured from Experian Plaintiff's individual and personal credit report, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

52.     When Plaintiff discovered that Defendant had procured her personal, private and confidential information from Experian, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of her privacy.

53.     When Plaintiff discovered that Defendant had procured her personal, private and confidential information from Experian, Plaintiff was extremely worried, concerned and frustrated that Defendant's impermissible access of her personal, private and confidential information from one or more consumer reporting agency(ies) could continue indefinitely.

54.     When Plaintiff discovered that Defendant had procured her Confidential Information from Experian, Plaintiff was concerned about the continued security and privacy of her Confidential Information.

55.     When Plaintiff received her Discharge Order from the Bankruptcy Court, she rightfully believed that any and all of her unsecured debts incurred before June 23, 2018 were discharged in bankruptcy.    When Plaintiff discovered that Defendant had procured her Confidential Information, Plaintiff believed that Defendant would continue to act with impunity and continue to procure her Confidential Information indefinitely.

56.     The actions of Defendant caused Plaintiff to suffer from frustration, anxiety and emotional distress that manifested itself such that: (i) Plaintiff had a loss of appetite and experienced weight loss.

## V.     JURY DEMAND

57.     Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, SAMANTHA MILLER, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

a.      All actual compensatory damages suffered;

b.      Statutory damages of $1,000.00 for Defendant's violation of the FCRA;

c.      Punitive damages;

d.      Plaintiff's attorneys' fees and costs; and,

e.      Any other relief deemed appropriate by this Honorable Court.


                                        Respectfully submitted,
                                        **SAMANTHA MILLER**


                                 By:    s/ Paul T. Krispin, Jr.
                                        Attorney for Plaintiff

Dated: October 25, 2020

Paul T. Krispin, Jr. (Bar # 33203)
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
**Telephone:**    (314) 667-4382
**Facsimile:**    (888) 418-1277
**E-Mail:**       pkrispin@smithmarco.com